***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Harris and the briefs and oral arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence or rehear the parties or their representatives. Accordingly, the Full Commission affirms with modifications, the Opinion and Award of the Deputy Commissioner.
 *********** ISSUES
The issues are:
1. Whether plaintiff is entitled to temporary total disability compensation at any time since August 16, 2006? *Page 2 
2. Whether plaintiff's left arm/shoulder and/or reflex sympathetic dystrophy (RSD) are compensable?
3. Whether Dr. Jerry Barron should be designated as plaintiff's treating physician?
4. Whether defendants should be sanctioned for their conduct in this claim, including but not limited to payment of attorney's fees under N.C. Gen. Stat. § 97-88.1?
 ***********
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner and in the executed Pre-Trial Agreement as:
 STIPULATIONS
1. The parties are subject to the North Carolina Workers' Compensation Act.
2. An employee-employer relationship existed between plaintiff and defendant-employer.
3. The carrier liable on the risk is correctly named above.
4. Plaintiff's average weekly wage is $340.00 per week.
5. Plaintiff sustained an injury on or about April 11, 2006.
6. The injury arose out of and in the course of employment and is compensable.
 *********** EXHIBITS
The following documents are received and admitted for the purposes specified:
 1. Executed Pre-Trial Agreement.
 2. Industrial Commission Forms and Orders.
 3. Mediation Agreement dated 3/28/07. *Page 3 
 4. Fax to adjuster requesting resumption of TTD compensation dated June 6, 2006.

5. Plaintiff's Motion Regarding Second Opinion dated September 12, 2006 and defendants' response.
 6. Plaintiff's partial job search records.
 7. Plaintiff's discovery responses.
 8. Plaintiff's medical records.
 9. Industrial Commission Nurse Reports.
 10. Plaintiff's Motion to Approve Dr. Barron as Treating Physician dated June 15, 2007.
The following document was accepted into evidence as a plaintiff's exhibit:
 1. Plaintiff's partial job search records.
The following document was accepted into evidence as defendants' exhibit:
 2. Accident reports.
Transcripts of the depositions of the following were also received post-hearing:
 • Dr. Timothy H. Kirkland (with Exhibits 1 2).
 • Dr. Jerry L. Barron (with Exhibit 1).
 *********** EVIDENTIARY RULINGS
The objections raised by counsel at the depositions taken in this matter are ruled upon in accordance with the law and the Opinion and Award.
 *********** *Page 4 
Based upon all of the competent evidence of record and the reasonable inferences flowing therefrom, the Full Commission enters the following:
 FINDINGS OF FACT
1. Plaintiff is 38 years old and completed the eighth grade. As of the date of the hearing, she was working on completing her GED. Her work history consisted almost entirely of knitting and hosiery factory work, and some cleaning work.
2. On April 11, 2006, plaintiff was employed with defendant-employer, a temporary worker service, and was working a manufacturing job at Jobst Carolina plant. Plaintiff was operating a heat transfer iron and accidentally depressed the foot pedal while her left hand was in the machine. The iron, heated to 350 degrees Fahrenheit, came down on her left hand, trapping it and burning it, and plaintiff instinctively and forcefully reacted, jerking her left hand out of the machine.
3. Although defendants contend that plaintiff's failure to report that she jerked her arm out of the machine renders her testimony to that effect less than credible, the Full Commission finds that it is foreseeable that anyone whose hand is being burned will react by removing his or her hand from the heat source immediately and forcefully. Further, the burns themselves were the immediate concern and plaintiff reported them immediately.
4. Plaintiff sustained second degree burns to her left hand and fingers, which were accepted as compensable and treated. The burns themselves have healed with some scarring, but are not in themselves currently at issue in this matter.
5. Prior to April 11, 2006, plaintiff had been diagnosed with carpal tunnel syndrome, but she had no left shoulder or RSD-type problems. *Page 5 
6. Defendants sent plaintiff to Burke Occupational Health, where she was treated for her burns by William C. Vaassen, PA-C. By May 23, 2006, Mr. Vaassen's office note indicated that plaintiff was having "pain all the way up to her elbow." The June 2, 2006 note shows that plaintiff was having pain "in arm to shoulder."
7. Plaintiff developed left arm and shoulder pain within a week following the April 11, 2006 accident.
8. Defendant-carrier paid temporary total disability compensation to plaintiff until about May 30, 2006, when it unilaterally stopped TTD without filing a Form 24, Form 28 or Form 28T.
9. Defendant-carrier authorized plaintiff to have a one-time visit on August 18, 2006 for an evaluation of her left hand with Dr. Kirkland, a hand specialist. Being authorized by defendant-carrier to treat only the hand, Dr. Kirkland did not undertake a detailed examination of plaintiff's left shoulder. He did not order any radiographic tests of the shoulder, and he did not know that Mr. Vaasen had noted arm and shoulder problems soon after the accident.
10. Upon the conclusion of his August 18, 2006 examination, Dr. Kirkland did not know what was causing plaintiff's pain, and he recommended that she seek another medical opinion.
11. As Dr. Kirkland testified, if he had found a rotator cuff tear in plaintiff's left shoulder on August 18, 2006, he probably would have imposed work restrictions.
12. The parties mediated this claim on March 28, 2007. The parties agreed that defendants would make a lump sum payment to plaintiff "in compromise of any *Page 6 
benefits, penalties, attorney's fees and/or interest plaintiff contends are due her through August 16, 2006." Defendants also agreed to authorize an evaluation for plaintiff with Dr. Barron.
13. Plaintiff first saw Dr. Barron, an orthopaedic surgeon specializing in shoulder and knee conditions on April 23, 2007. Dr. Barron reviewed plaintiff's medical reports before this initial evaluation. Plaintiff complained of pain in her entire left upper extremity, from shoulder to fingers.
14. Dr. Barron ordered a left shoulder MRI, which plaintiff underwent on June 5, 2007. The MRI results suggested that plaintiff has impingement, some AC joint arthrosis, a possible labral tear and some biceps tendinopathy with a possible tear. The MRI results were consistent with Dr. Barron's findings of stiffness in plaintiff's elbow and shoulder.
15. Plaintiff returned to Dr. Barron on June 13, 2007, and in view of the MRI results, Dr. Barron recommended that plaintiff undergo an arthroscopic examination of her left shoulder. However, Dr. Barron's main concern was that plaintiff had developed RSD in her left arm, and he recommended that before she undergoes any shoulder surgery, she be evaluated by a pain management specialist for diagnosis and treatment. Dr. Barron referred plaintiff to Southeast Pain Care in Charlotte. As he testified, plaintiff definitely needs pain management for her left shoulder/arm condition, whether she has surgery or not.
16. As Dr. Barron testified, the shoulder and arm pathology he found upon physical examination and in his MRI review was more likely than not caused by, or at least substantially aggravated by the April 11, 2006 accident.
17. Dr. Barron wrote plaintiff entirely out of work as a consequence of her significant pain and her "functionless left upper extremity." As Dr. Barron testified, if he had seen plaintiff *Page 7 
on an earlier date and her examination was similar to what he found during his first evaluation of plaintiff on April 23, 2007, he probably would not have allowed her to work at least until she was evaluated and treated for possible RSD.
18. To the extent, if any, that their testimony is in conflict, the Full Commission gives greater weight to that of Dr. Barron than that of Dr. Kirkland, because Dr. Barron specializes in shoulder injuries and because he saw plaintiff more than once.
19. Defendant-employer's personnel had told plaintiff that defendant-employer has no work available for her within her physical limitations. Plaintiff has undertaken a reasonable job search but has been unsuccessful.
20. As of the hearing, plaintiff rated the pain in her left shoulder and arm as 8/10. She is taking Hydrocodone 500 mg for the pain, as prescribed by Dr. Barron. Prior to going on the medication, plaintiff testified that her pain was 10/10.
21. The Full Commission finds that the medical treatment that Dr. Barron provided for plaintiff's left arm/shoulder conditions has been reasonably required to provide relief to plaintiff.
22. Based on the stipulated average weekly wage of $340.00, plaintiff's compensation rate is $226.68.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW *Page 8 
1. Plaintiff has shown that she sustained left arm and shoulder injuries and/or developed a left arm condition as a result of her April 11, 2006 accident. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff has shown that as a consequence of her compensable left arm/shoulder conditions, she has been disabled since April 16, 2006, in that she has been incapable of work in any employment per the testimony of Dr. Barron. The Full Commission reasonably infers, based on Dr. Barron's and Dr. Kirkland's testimony, that plaintiff has been incapable of work in any employment since August 16, 2006. As such, plaintiff is entitled to temporary total disability compensation for the period from August 16, 2006 through the present and ongoing. N.C. Gen. Stat. § 97-29.
3. Plaintiff is entitled to further medical treatment for her compensable left arm/shoulder conditions with and at the direction of Dr. Barron. Plaintiff is also entitled to have defendants pay for the treatment, prescriptions and diagnostic testing she has already received with Dr. Barron for said conditions. N.C. Gen. Stat. §§ 97-2(19) and97-25.
4. Defendants have not defended this claim without reasonable grounds, and as such, plaintiff is not entitled to attorney's fees under N.C. Gen. Stat. § 97-88.1. However, defendants should be sanctioned for their unilateral termination of plaintiff's temporary total disability compensation without filing a Form 24, Form 28 or Form 28T per Rule 802. Under N.C. Gen. Stat. § 97-88, in the discretion of the Commission, an attorney fee for plaintiff's counsel should be awarded regarding defendant's appeal. Defendant-insurer appealed from an Opinion and Award of Deputy Commissioner paying compenstion.
 *********** *Page 9 
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to a reasonable attorney's fee hereinafter approved, defendants SHALL pay to plaintiff temporary total disability compensation in the amount of $226.68 per week from August 16, 2006 through the present, and continuing until further Order of the Industrial Commission. Payments that are now passed due should be paid to plaintiff in one lump sum.
2. Pursuant to N.C. Gen. Stat. § 97-86.2, defendants SHALL pay plaintiff 8% interest upon the accrued portion of the award from the August 20, 2007 hearing before the Deputy Commissioner until paid.
3. As a reasonable fee, defendants SHALL pay one-fourth of the lump sum amount due per Paragraph 1 above (but no part of the interest provided in Paragraph 2) directly to plaintiff's counsel, said fee to come out of said lump sum amount and not in addition to it. Defendants SHALL also make every fourth ongoing TTD check payable directly to plaintiff's counsel.
4. As part of the costs, defendants SHALL, pursuant to N.C. Gen. Stat. § 97-88, pay to plaintiff's counsel attorney fees in connection with defendant-insurer's appeal to the Full Commission. Plaintiff's counsel is directed to submit an Itemization of his hourly rate and time incurred in connection with defendant-insurer's appeal to the Full Commission. A reasonable award will be entered by the Commission at that time.
5. Dr. Barron and Southeast Pain Care ARE HEREBY DESIGNATED as plaintiff's treating physicians, and defendants SHALL authorize and pay for the treatment that any of them *Page 10 
recommend for plaintiff's compensable left arm/shoulder conditions, including but not limited to diagnostic testing, surgery, prescriptions, physical therapy, referrals and mileage.
6. Defendants SHALL pay for any treatment and testing that plaintiff has heretofore received for her compensable left arm/shoulder conditions, including but not limited to the June 5, 2007 MRI, the follow-ups with Dr. Barron and the prescription medications. To the extent that plaintiff or any third-party payor has paid for such treatment and/or testing, defendants SHALL reimburse such payor in full.
7. For its unilateral termination of plaintiff's TTD compensation without filing any of the required forms, defendant-carrier SHALL pay a fine to the Industrial Commission of $500.00.
8. Defendants shall pay the costs. As part of their costs, if they have not done so already, defendants shall pay the previously approved expert witness fees to Dr. Barron of $510.00 and the $510.00 approved for Dr. Kirkland.
This the 15th day of October 2008.
S/___________________ DANNY LEE McDONALD COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER *Page 11 
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1